# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

**Civil No. 11-2542 (JRT/TNL)**

MASTR ASSET BACKED SECURITIES
TRUST 2006-HE3 *by* U.S. BANK
NATIONAL ASSOCIATION, *solely in its
capacity as the trustee pursuant to a
Pooling and Servicing Agreement, dated as
of August 1, 2006*,

Plaintiff,

v.

WMC MORTGAGE, LLC *as successor to*
WMC MORTGAGE CORPORATION,

Defendant.

---

**Civil No. 12-1372 (JRT/TNL)**

WMC MORTGAGE, LLC *as successor to*
WMC MORTGAGE CORPORATION,

Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION
*for* MASTR ASSET BACKED
SECURITIES TRUST 2007-WMC1,
*acting solely in its capacity as the trustee
pursuant to a Pooling and Servicing
Agreement, dated as of February 1, 2007*,

Defendant.

---

**AMENDED
MEMORANDUM OPINION
AND ORDER**

**Civil No. 12-1831 (JRT/TNL)**

MASTR ASSET BACKED SECURITIES TRUST 2007-WMC1 *by* U.S. BANK NATIONAL ASSOCIATION, *solely in its capacity as the trustee pursuant to a Pooling and Servicing Agreement, dated as of February 1, 2007,*

Plaintiff,

v.

WMC MORTGAGE, LLC *formerly known as* WMC MORTGAGE CORPORATION,

Defendant.

---

**Civil No. 12-2149 (JRT/TNL)**

MASTR ASSET BACKED SECURITIES TRUST 2006-HE3 *by* U.S. BANK NATIONAL ASSOCIATION, *solely in its capacity as the Trustee pursuant to a Pooling and Servicing Agreement, dated as of August 1, 2006,*

Plaintiff,

v.

WMC MORTGAGE, LLC *as successor to* WMC MORTGAGE CORPORATION and EQUIFIRST CORPORATION,

Defendants.

---

Harry A. Olivar, Jr. and Jeremy Andersen, **QUINN EMANUEL URQUHART & SULLIVAN LLP**, 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017; and Justin H. Perl, **MASLON EDELMAN BORMAN & BRAND, LLP**, 90 South Seventh Street, Suite 3300, Minneapolis, MN 55402, for U.S. Bank National Association.

Paul M. Smith and Matthew S. Hellman, **JENNER & BLOCK**, 1099 New York Avenue NW, Washington, DC 20001; Megan B. Poetzel, **JENNER & BLOCK**, 353 North Clark Street, Chicago, IL 60654; and Jenny Gassman-Pines, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for WMC Mortgage, LLC.

David B. Bergman and Elliot C. Mogul, **ARNOLD & PORTER LLP**, 555 Twelfth Street NW, Washington, DC 20004; and Steven M. Phillips, **ANTHONY OSTLUND BAER & LOUWAGIE P.A.**, 90 South Seventh Street, Suite 3600, Minneapolis, MN 55402, for EquiFirst Corporation.

Each of these cases arises from a mortgage-backed securities trust with U.S. Bank National Association ("Trustee") as the trustee. WMC Mortgage, LLC ("WMC") and EquiFirst Corporation ("EquiFirst") are mortgage originators that sold mortgages to a trust managed by the Trustee. The Trustee alleges at least some of the mortgages sold to the trust were defective and that the originators should bear the costs to the trust of those defective mortgages.

In *WMC Mortgage, LLC v. U.S. Bank National Association* (Civ. No. 12-1372), WMC moves to dismiss Counts II through VI of the Trustee's Fourth Amended Counterclaims. The Trustee brings identical claims (except for the loans at issue) in its Second Amended Complaint in *MASTR Asset Backed Securities Trust 2007-WMC1 v. WMC Mortgage, LLC* (Civ. No. 12-1831), and WMC moves to dismiss those claims.

In *MASTR Asset Backed Securities Trust 2006-HE3 v. WMC Mortgage, LLC and EquiFirst Corp.* (Civ. No. 12-2149), the Trustee brings claims that are identical to those in Case Numbers 12-1372 and 12-1831, except for the trust and loans at issue. WMC moves to dismiss Counts II through VI, and EquiFirst moves to dismiss all of the Trustee's claims.

In *MASTR Asset Backed Securities Trust 2006-HE3 v. WMC Mortgage, LLC and EquiFirst Corp.* (Civ. No. 11-2542), WMC moves for summary judgment on the Trustee's claims that remain after WMC's motion to dismiss and previous motion for summary judgment. The Trustee moves to amend its complaint, proposing the same claims asserted in Case Numbers 12-1372, 12-1831, and 12-2149 against WMC and EquiFirst. For the reasons explained below, the Court will grant in part and deny in part the parties' motions.

## BACKGROUND

### *Mortgage-Backed Securities Trust*

"Securitization" is a financing technique which turns the right to receive money ("receivables") into present cash. Claire A. Hill, *Securitization: A Low-Cost Sweetener for Lemons*, 74 Wash. U. L.Q. 1061, 1067-68 (1996). The receivables – in this case mortgages – are sold into a "pool" – in this case a trust. *See id.* The pool can then sell interests to investors.

The loans at issue in these cases were sold to UBS Real Estate Securities Inc. ("UBS") subject to a purchase agreement between either WMC and UBS or EquiFirst and UBS. *MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg., LLC* ("*HE3-I*"), Civ. No. 11-2542, 843 F. Supp. 2d 996, 998 (D. Minn. 2012). UBS then assigned its rights in the loans to Mortgage Asset Securitization Transactions ("MASTR"). *MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg., LLC* ("*HE3-II*"), Civ. No. 11-2542, 2012 WL 4511065, at *1 n.1 (D. Minn. Oct. 1, 2012). MASTR, along with various other entities, entered into a Pooling Services Agreement which created the trust. *See id.* Two

trusts are at issue in these cases: (1) MASTR Asset Backed Securities Trust 2006-HE3 and (2) MASTR Asset Backed Securities Trust 2007-WMC1. Both EquiFirst and WMC sold mortgages that were pooled in MASTR Asset Backed Securities Trust 2006-HE3; EquiFirst did not sell any mortgages that were pooled into MASTR Asset Backed Securities Trust 2007-WMC1.

***Purchase Agreements***

This Court has previously held that the purchase agreements control WMC's and EquiFirst's obligations in these cases. *HE3-I*, 843 F. Supp. 2d at 998-99. The parties agree that New York law applies to the interpretation of the purchase agreements.

The purchase agreements signed by WMC and EquiFirst were not identical. *See id.* at 999; (Civ. No. 11-2542, Decl. of Rosie Nguyencuu, Ex. 2 ("WMC Purchase Agreement"), Dec. 28, 2012, Docket No. 106; Civ. No. 12-2149, Compl., Ex. B ("EquiFirst Purchase Agreement"), Aug. 30, 2012, Docket No. 1.) The EquiFirst Purchase Agreement required the party discovering an alleged breach of representations and warranties to give notice of the breach no later than sixty days after the discovery of the alleged breach. (EquiFirst Purchase Agreement § 3.03.) The WMC Purchase Agreement required the party discovering an alleged breach of representations and warranties to give "prompt notice" of the breach but did not specify a number of days. (WMC Purchase Agreement § 3.03.)

Both purchase agreements provided that "[u]pon discovery" by the originator of "a breach of any of the foregoing representations and warranties" the originator shall give prompt written notice to the Trustee. (WMC Purchase Agreement § 3.03; EquiFirst

Purchase Agreement § 3.03.)  Both agreements also provide that the originator will cure the breach within sixty days of its discovery of the breach or will repurchase the defective mortgage loan.  (WMC Purchase Agreement § 3.03; EquiFirst Purchase Agreement § 3.03.)  The WMC Purchase Agreement provides that if a breach of the representations and warranties is not cured within sixty days of "the earlier of either discovery by or notice to" WMC of the breach, WMC must, at the Trustee's option, repurchase "all of the affected Mortgage Loans."  (WMC Purchase Agreement § 3.03.)  The EquiFirst Purchase Agreement provides that if a breach of the representations and warranties is not cured within sixty days of "the earlier of either discovery by or notice to" EquiFirst of the breach, EquiFirst must, at the Trustee's option, repurchase "all Mortgage Loans." (EquiFirst Purchase Agreement § 3.03.)  Both purchase agreements limited the remedies "respecting a breach" to "cure, substitute, or repurchase" of an allegedly defective mortgage.  *HE3-I*, 843 F. Supp. 2d at 1001.

Each purchase agreement included an indemnification clause.   The WMC Purchase Agreement provided that

> [WMC] shall indemnify [the Trustee]. . . and hold them harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Company's representations and warranties . . . .

(WMC Purchase Agreement at § 3.03.)  The EquiFirst Purchase Agreement included a separate section with the heading "Indemnification; Third Party Claims" which provided that

[EquiFirst] agrees to indemnify [the Trustee] . . . and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that [the Trustee] may sustain in any way related to the failure of [EquiFirst] to observe and perform its duties, obligations, and covenants . . . or as a result of the breach of a representation or warranty . . . .

(EquiFirst Purchase Agreement § 5.01.)

## Procedural History

The Trustee contends that the mortgages WMC and EquiFirst sold to the trusts violated their respective representations and warranties, including the representation and warranty that the loans complied with certain underwriting guidelines. (*See, e.g.*, Civ. No. 12-2149, First Am. Compl. ¶¶ 65-82, Nov. 30, 2012, Docket No. 27.) In the original action, *MASTR Asset Backed Securities Trust 2006-HE3 v. WMC Mortgage, LLC and EquiFirst Corp.* (Civ. No. 11-2542), the Trustee demanded that WMC and EquiFirst repurchase the allegedly defective loans, pursuant to the purchase agreements. WMC and EquiFirst brought motions to dismiss. *See HE3-I*, 843 F. Supp. 2d at 997. In February 2012, the Court granted EquiFirst's motion and granted in part WMC's motion. *Id.* at 1001-02. The Court dismissed all the claims against both WMC and EquiFirst related to loans for which the Trustee had not provided notice and an opportunity to cure. *Id.* at 1000. The Court dismissed all claims against EquiFirst because it concluded that the Trustee had not given EquiFirst timely notice required under its purchase agreement which required notice within sixty days. *Id.* Finally, the Court dismissed the Trustee's claim for damages against WMC because it concluded that the WMC Purchase Agreement limited the remedies available to "cure, repurchase, and substitution" so the

Trustee could not recover "additional remedies, including monetary damages." *Id.* at 1001.

WMC subsequently moved for partial summary judgment with respect to eighty of the loans at issue. *HE3-II*, 2012 WL 4511065, at *4. The Court granted WMC's motion and dismissed the loans because it found that the Trustee had liquidated the loans and "the only remaining remedy – specific performance" – was no longer available to the Trustee. *Id.* at * 6.

WMC now moves for summary judgment on the remaining nineteen loans because it has determined that the Trustee also liquidated those loans. The Trustee admits that its existing claims would be subject to an adverse judgment under the Court's prior rulings but seeks leave to amend its complaint before final judgment is entered. The Trustee also seeks to amend its claims with respect to EquiFirst for the first time since its claims against EquiFirst were dismissed in February 2012.

*MASTR Asset Backed Securities Trust 2006-HE3 v. WMC Mortgage, LLC and EquiFirst Corp.* (Civ. No. 12-2149) concerns the same trust, the same pool of loans, the same contract, and the same parties as Case Number 11-2542. Although Case Number 12-2149 was originally filed with the same claims as Case Number 11-2542, after the Court's ruling in *HE3-II*, the Trustee amended its complaint. (Civ. No. 12-2149, First Am. Compl., Nov. 30, 2012, Docket No. 27.) WMC now seeks to dismiss the Trustee's amended complaint.

Following this Court's decision in *HE3-II*, the Trustee brought claims against WMC in the Southern District of New York arising from a different trust. That court

transferred the case to this Court and is now *MASTR Asset Backed Securities Trust 2007-WMC1 v. WMC Mortgage, LLC* (Civ. No. 12-1831).  After the Court's ruling in *HE3-II*, the Trustee amended its complaint (Civ. No. 12-1831, Second Am. Compl., Nov. 30, 2012, Docket No. 54), and WMC now seeks to dismiss the amended complaint.

In June 2012 (after *HE3-I* was decided and the Trustee brought its claims in New York), WMC filed three declaratory judgment actions against the Trustee in this District regarding three different trusts (Civ. Nos. 12-1370, 12-1371, 12-1372).  One of these three actions is currently before the Court, *WMC Mortgage, LLC v. U.S. Bank National Association* (Civ. No. 12-1372), and concerns the same trust as Case Number 12-1831. After the Court's ruling in *HE3-II*, the Trustee amended its Answer and Counterclaims for the fourth time.  (Civ. No. 12-1372, Fourth Am. Answer & Countercl., Docket No. 53, Nov. 30, 2012.)  WMC moves to dismiss the Trustee's counterclaims.

### Claims and Allegations of Trustee's Complaints and Counterclaims

The claims now pled by the Trustee in Case Numbers 12-2149, 12-1372, and 12-1831 are practically identical.  In Case Number 11-2542, the Trustee seeks to amend its complaint to recite the same claims as in the other three cases.

- **Count I:** Breach of Contract (Specific Performance—Representations and Warranties)

- **Count II**: Breach of Contract (Damages—Failure to Repurchase and Indemnify)

- o For both parties, the Trustee seeks damages for failure to repurchase materially defective loans.

- o For EquiFirst only, the Trustee seeks damages for failure to repurchase **all** of the loans in the trust.

- **Count III**: Breach of Contract (Damages—Failure to Notify)

- **Count IV**: Indemnification

- **Count V**: Breach of Contract (Damages—Failure to Make Whole)

- **Count VI**: Declaratory Relief

  - o "The Trust is entitled to an order declaring that the Originators are obligated to repurchase, indemnify, or otherwise make appropriate (i.e. non-$0) make-whole payments to the Trust for loans that are identified as being in breach of the Representations and Warranties, regardless of whether such loans have been foreclosed on or otherwise liquidated."

  - o "The Trust is also entitled to an order declaring that 'notice' by the Trust is not a condition precedent for such a make-whole obligation."

The claims currently at issue in Case Number 11-2542 are different; however, the Trustee agrees that WMC's motion for summary judgment on the remaining non-amended claims should be granted under the Court's prior rulings.

In contrast to the original complaint filed in Case Number 11-2542, the Trustee now alleges additional facts to support its breach of contract claims, asserting that WMC and EquiFirst ("the Originators") agreed to notify the Trustee of any breaches (*see, e.g.*, Civ. No. 12-2149, Nov. 30, 2012, First Am. Compl. ¶ 34, Docket No. 27); the Originators

agreed to indemnify the Trust for the loans (*see*, *e.g.*, *id.* ¶¶ 35-36); and that the Originators knew of breaches of their representations and warranties before the Trust provided them with notice of breach (*see, e.g.*, *id.* ¶¶ 88-91).

## ANALYSIS

## I.    MOTIONS TO DISMISS

WMC moves to dismiss Counts II through VI of Trustee's complaint in Case Numbers 12-1831 and 12-2149 and of the Trustee's counterclaims in Case Number 12-1372.  EquiFirst moves to dismiss the Trustee's entire complaint in Case Number 12-2149.

### A.    Standard of Review

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the non-moving party.  *See, e.g.*, *Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002).  To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks omitted).

**B.     WMC's Motions to Dismiss**

WMC's and the Trustee's arguments for and against dismissal are virtually identical in Case Numbers 12-1831, 12-2149 (motions to dismiss the complaint) and 12-1372 (motion to dismiss the counterclaims).  The Court will address the three cases together.

**1.     Breach of Contract Claims**

The Trustee brings four different breach of contract claims.  Count I, which is not the subject of WMC's motions to dismiss, requests specific performance, and the Court has previously addressed the availability of this claim.  *See HE3-II*, 2012 WL 4511065 (limiting specific performance remedy to situations where proper notice was given and loans have not been foreclosed on and liquidated).  Counts II, III, and V seek monetary damages for failure to repurchase and indemnify, failure to notify, and failure to make whole.  In each case, the Trustee contends that monetary remedies should be available and WMC argues that the sole remedies clause precludes remedies other than repurchase, cure, or substitution.  Importantly, this Court has previously held that, on the theories previously pled, "the Trustee is limited to its claim for specific performance of the repurchase remedy."  *Id.* at *1 (citing *HE3-I*, 843 F. Supp. 2d at 1001).

### a.    Count II: Failure to Repurchase Claim

The Trustee argues that it is entitled to damages for WMC's failure to honor its cure, repurchase, or indemnification[1] obligations (Count II).   In *HE3-I*, this Court dismissed the Trustee's damages claims because it found that the purchase agreement limited the remedies to cure, substitution, or repurchase.  843 F. Supp. 2d at 1001.  The Trustee admits in its pleadings that the "Cure Period has expired" (*see, e.g.*, Civ. No. 12-2149, First Am. Compl. ¶¶ 84, 110, Nov. 30, 2012, Docket No. 27) but argues that it must be entitled to further remedies because substitution and repurchase are no longer available.

Because New York law applies, this Court must predict if the New York Court of Appeals would find that the failure to provide a contractual repurchase remedy constitutes a separate breach, independent of the underlying breach of representations and warranties.  This Court finds that it would not.  Although some courts applying New York law have concluded that a breach of the underlying representations and warranties merits monetary damages when specific performance is not possible, these cases are not dispositive.

For example, in *Resolution Trust Corp. v. Key Financial Services, Inc.*, the court, applying New York law, concluded that Key Financial Services was obligated to pay damages after it rebuffed a demand that the disputed mortgages be repurchased.  280 F.3d 12, 14, 18 (1st Cir. 2002).  In contrast, nothing in the record here suggests that the Trustee

---

[1] As discussed in Part I.B.2, *infra*, the Trustee does not adequately allege that WMC breached its indemnification obligations.

demanded repurchase before it sold the mortgages.  In *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, the court concluded that while the purchase agreement between the parties limited the remedies to repurchase or cure, other agreements between the parties prevented these "sole remed[ies]" from precluding breach of contract claims when Flagstar refused to comply with its repurchase obligations.  No. 11 Civ. 2375, 2011 WL 5335566, at *5 (S.D.N.Y. Oct. 31, 2011).  In contrast, here, the purchase agreement controls, *HE3-I*, 843 F. Supp. 2d at 998-99, and the Trustee is limited to the remedies identified therein, *id.* at 1001; *see also HE3-II*, 2012 WL 4511065, at *4.  Because the Court can find no indication that the sole remedies clause in the purchase agreement should not control here,[2] it concludes that no money damages are warranted for a breach of the underlying representations and warranties even when specific performance is not possible.

Additionally, even the Trustee cites to cases addressing contracts which expressly envisioned that failure to repurchase would constitute a separate breach.  *See, e.g.*, *La Salle Bank Nat'l Ass'n v. CIBC, Inc.*, No. 08 Civ. 8426, 2012 WL 112208, at *1 (S.D.N.Y. Jan. 12, 2012) (noting that the purchase agreement provides a sole remedies provision but states "no limitation of remedy is implied with respect to the Seller's breach

---

[2] New York state court law is contradictory.  One court opined that *Resolution Trust* "does not hold that a failure to repurchase on demand constitutes an independent breach of contract."  *Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2005-S4 ex rel. HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital, Inc.*, 39 Misc. 3d 1226(A), 2013 WL 2072817, at *9-10 (N.Y. Sup. Ct. May 10, 2013) (rejecting Plaintiff's argument that each refusal of Nomura to "repurchase the defective mortgages is an independent breach of contract separate and apart from the representations" and restarts the statute of limitations).  On the other hand, a different court held that it **was** a breach for an originator to reject a trustee's repurchase demand.  *ACE Sec. Corp. v. DB Structured Prods., Inc.*, No. 650980/2012, 2013 WL 1981345, at *4 (N.Y. Sup. Ct. May 13, 2013) ("Ergo, the breach is the failure to comply with the demand.").

of its obligation to cure, repurchase or substitute in accordance with the terms and conditions of this Agreement"). That is, the parties could have expressly provided in their contract that failure to repurchase is a different breach and that a remedy exists for that failure – but did not. Because these were sophisticated parties that knew how to provide an exception to the sole remedies provision and yet did not do so, the Court will grant WMC's motion to dismiss Count II.

### b.     Count III: Failure to Notify Claim

The Trustee has pled that WMC knew or should have known of breaches of its representations and warranties (*see, e.g.*, Civ. No. 12-2149, Nov. 30, 2012, First Am. Compl. ¶¶ 88-91, Docket No. 27) and failed to notify the Trustee of that breach, as required by the WMC Purchase Agreement. The Trustee seeks monetary damages for WMC's failure to notify. This Court has previously concluded that the WMC Purchase Agreement bars any money damages from a claim "respecting a breach of [those] representations and warranties" for which the sole remedy is repurchase. *HE3-I*, 843 F. Supp. 2d at 1001 (citing (WMC Purchase Agreement § 3.03)). Nevertheless, this Court finds that the Trustee's failure to notify claim is not a claim "respecting a breach" of the representations and warranties. If, as the Trustee pleads, WMC knew of a breach of the representations and warranties and the Trustee did not, then the Trustee did not have an opportunity to request WMC to cure or repurchase the defective mortgage, as provided by the sole remedies clause. Indeed, if failure to notify was not a breach of the contract, then WMC would have had no incentive to notify the Trustee of any breach it

discovered, preventing the Trustee from being able to seek the remedies of cure, substitution or repurchase.

Because the Court finds that the Trustee should be given the opportunity to prove that WMC knew of a breach and failed to notify the Trustee as required by the WMC Purchase Agreement (*see* WMC Purchase Agreement § 3.03.), the Court will deny WMC's motion to dismiss Count III. The Court notes, however, that to be entitled to damages, the Trustee must show that WMC knew of the breach and that the Trustee itself did not have knowledge of a breach of the representations and warranties.

### c. Count V: Failure to Make Whole Claim

Should the Court deny it damages for WMC's failure to repurchase or indemnify under Count II, the Trustee argues that it should still be made whole (Count V). The Trustee argues that the sole remedies claim should not apply because the clause protects WMC from gross negligence – and WMC was grossly negligent in failing to determine that the loans were defective. (*See, e.g.*, Civ. No. 12-2149, Nov. 30, 2012, First Am. Compl. ¶¶ 89-91, Docket No. 27.) Although New York law generally enforces contractual provisions absolving a party from its own negligence, "a party may not insulate itself from damages caused by grossly negligent conduct." *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1370 (N.Y. 1992); *see also Lenoci v. Secure Alarm Installations, LLC*, 949 N.Y.S.2d 122, 123 (N.Y. App. Div. 2012). "The gross negligence exception applies even to contracts between sophisticated commercial parties, although a more exacting standard of gross negligence must be satisfied." *Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp. 2d 312, 318 (S.D.N.Y. 2010) (internal quotation marks

omitted). "In these circumstances, the defendant's conduct must amount to intentional wrongdoing, willful conduct that is fraudulent, malicious or prompted . . . by one acting in bad faith, or conduct constituting gross negligence or reckless indifference to the rights of others." *Id.* (internal quotation marks omitted).

WMC does not argue that the Trustee failed to adequately plead gross negligence or recklessness,[3] and at the motion to dismiss stage, the Court must consider all facts alleged in the complaints as true. The Trustee alleges that WMC should have known of the defects in the loans, and that WMC was grossly negligent in not discovering the defects in the loans. (*See, e.g.*, No. 12-2149, First Am. Compl. ¶¶ 89-91, Docket No. 27.) The Trustee further alleges that WMC knew of the defects in the loans and did not provide notice to the Trustee. (*Id.*) To the extent it alleges that WMC knew of the defects and did not notify the Trustee, allowing the Trustee to liquidate the loans and relieving WMC of its repurchase obligation, the Trustee has alleged facts that support an inference that WMC acted with reckless indifference to the rights of the Trustee to be notified of breaches and to request substitution, cure, or repurchase. At this motion to dismiss stage, the Court will allow the claims to proceed. If the Trustee is able to prove facts that demonstrate WMC acted in a grossly negligent or reckless manner, the sole

---

[3] WMC argues that the gross negligence analysis only applies to contract clauses "purporting to exonerate a party from liability and clauses limiting damages to a nominal sum." *Sommer*, 593 N.E.2d at 1371. WMC further argues that the WMC Purchase Agreement provides the Trustee with a full remedy and so does not exonerate it from liability. The gross negligence exception prevents the application of "exculpatory clauses" which "deprive a contracting party of the right to recover for damages suffered as the result of the exonerated party's tortious act." *Austro v. Niagara Mohawk Power Corp.*, 487 N.E.2d 267, 267 (1985). Therefore the gross negligence exception is applicable to the sole remedies provision of the purchase agreement.

remedies clause would be ineffective. The Court will, therefore, deny WMC's motion to dismiss Count V.

## 2. Count IV: Contractual Indemnification

The Trustee argues that the indemnification clause in the WMC Purchase Agreement provides that WMC will indemnify the Trustee against direct losses resulting from misrepresented loans. But under New York law, "the intention to cover first-party losses must be 'unmistakably clear.'" *BNP Paribas Mortg. Corp v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 417 (S.D.N.Y. 2011) (quoting *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 598 N.E.2d 903, 905 (N.Y. 1989)). The relevant language states that WMC will indemnify the Trustee "**against any losses**, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses **resulting from** **any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Company's representations and warranties** . . . ." (WMC Purchase Agreement at § 3.03 (emphasis added).)

The Trustee argues that this clause must encompass its demands because otherwise the second "resulting from" clause would be redundant. That is, the Trustee argues, the clause must cover (1) losses "resulting from any claim demand, defense or assertion based on or grounded upon" a breach of the representations or warranties; **and** (2) losses directly "resulting from" a breach of the representations or warranties. (*Id.*) But it is equally plausible that the clause only covers third party claims "based on or grounded upon, or resulting from, a breach of the Company's representations and

- 18 -

warranties." (*Id.*)  That is, the indemnification clause does not unambiguously provide coverage to first-party claims.  *See Hooper*, 598 N.E.2d at 905.

In the alternative, the Trustee argues that the case does involve third-party demands or assertions because the Trustee is acting "'at the direction of' certain Certificateholders."[4]  (*See, e.g.*, 12-2149, Trustee's Mem. in Opp. at 13, Docket No. 51.) Even if the litigation was brought at the direction of a third party, it was not brought **by** a third party against either of these parties.  *See Assured Guar. Corp. v. EMC Mortg., LLC*, 39 Misc. 3d 1207(A), 2013 WL 1442177, at *5 (N.Y. Sup. Ct. Apr. 4, 2013) (rejecting party's attempt to characterize similar claims as third party claims while "plainly seeking coverage for its own losses").  Nor has the Trustee alleged that the Certificateholders brought a claim against the Trustee sufficient to trigger third-party indemnification obligations.  Consequently, the Court will grant WMC's motion to dismiss Count IV because the WMC Purchase Agreement does not extend indemnification protection to the Trustee's claims.

### 3.    Count VI: Declaratory Relief

The Trustee also seeks declaratory relief including (1) "an order declaring that the Originators are obligated to repurchase, indemnify, or otherwise make appropriate (i.e. non-$0) make-whole payments to the Trust for loans that are identified as being in breach of the Representations and Warranties, regardless of whether such loans have been foreclosed on or otherwise liquidated" and (2) "an order declaring that 'notice' by the

---

[4] Each trust sold interests to investors in the form of "certificates" and the Certificateholder had "a right to share in the cash flows from the underlying mortgage loans." (*See, e.g.*, No. 12-2149, First Am. Compl. ¶ 1, Docket No. 27.)

Trust is not a condition precedent for such a make-whole obligation." (*See, e.g.*, No. 12-2149, First Am. Compl. ¶¶ 136-137, Docket No. 27.)

"When a request for a declaratory judgment alleges . . . duties and obligations under the terms of a contract and asks the court to declare those terms breached[, it] is nothing more than a petition claiming breach of contract." *Daum v. Planit Solutions, Inc.*, 619 F. Supp. 2d 652, 657 (D. Minn. 2009) (internal quotation marks omitted). Count VI seeks, in part, a declaration that liquidation of a Loan does not extinguish the trust's remedial rights. The Court concludes that this claim is duplicative with Trustee's breach of contract claims, *see HE3-I*, 843 F. Supp. 2d at 1001, especially its claim based on WMC's failure to repurchase (Count II). The Trustee also requests that the Court order that "prompt notice" is not a condition precedent to repurchase of the loans.[5] The Court similarly finds that this claim is duplicative of the Trustee's breach of contract claims, in particular its claim grounded in WMC's failure to notify (Count III). *See id.* The Court will therefore grant WMC's motion to dismiss the Trustee's declaratory judgment claim.

---

[5] WMC argues that the Court has already decided that prompt notice is a condition precedent to repurchase. The Court disagrees. When the Court previously concluded that the Trustee's failure to give notice of the alleged breaches meant that its claims for repurchase must be dismissed, *see HE3-I*, 843 F. Supp. 2d at 1000; *HE3-II*, 2012 WL 4511065, at *6, the Trustee had not pled (which it now has) that WMC knew of the defects in the loan and had a duty to report those defects to the Trustee. (*See, e.g.*, Civ. No. 12-2149, Compl. ¶¶ 89-91 (pleading that WMC knew of the breaches to the representations and warranties); *id.* ¶¶ 115-17 (pleading that WMC failed to notify the Trustee of the defects and breaches to the representations and warranties).) Moreover, WMC itself noted that if Trustee "could prove that WMC knew of the alleged breaches and failed to notify [Trustee], that might in turn relieve [Trustee] of **its** duty to have provided WMC with prompt notice of these alleged breaches." (Civ. No. 12-2149, WMC's Resp.. in Supp. of Mot. to Dismiss at 15, Mar. 20, 2013, Docket No. 52.)

## C. EquiFirst's Motion to Dismiss

In Case Number 12-2149, the Trustee brings the same four breach of contract claims against EquiFirst that it brings against WMC, and EquiFirst moves to dismiss the complaint. Count I requests specific performance. In *HE3-I*, the Court granted EquiFirst's motion to dismiss this claim because the Trustee did not give timely notice of the breach. 843 F. Supp. 2d at 1000. Counts II, III, and V seek monetary damages for failure to repurchase and indemnify, failure to notify, and failure to make whole. In addition to the claims made against WMC, the Trustee seeks damages against EquiFirst for its failure to repurchase **all** of the loans EquiFirst sold to the trust. In each case, the Trustee contends that monetary remedies should be available and EquiFirst argues that the sole remedies clause precludes remedies other than repurchase, cure, or substitution. As support, EquiFirst relies on the holdings made with respect to the similar WMC Purchase Agreement in *HE3-II*. The Trustee also brings indemnification (Count IV) and declaratory judgment (Count VI) claims against EquiFirst identical to those it makes against WMC.

### 1. Notice as Condition Precedent

EquiFirst argues that all of the Trustee's claims must be dismissed because the Court held in *HE3-I* that timely notice is a condition precedent, yet in this case the Trustee did not plead that it provided timely notice. In *HE3-I*, the Trustee had not pled that EquiFirst knew of the breaches and failed to notify the Trustee (only that the Trustee had notified EquiFirst and EquiFirst had failed to repurchase). The Trustee argues that because it has now pled that EquiFirst had actual knowledge of the breaches, it was not

required to give timely notice to EquiFirst. In response, EquiFirst argues that the Trustee was required to give sixty days of notice in any situation.

The EquiFirst Purchase Agreement provides that

> With respect to the representations and warranties which are made to the best of the Company's knowledge, **if it is discovered by the Company or the Purchaser that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loan** or the interests of the Purchaser therein, **notwithstanding the Company's lack of knowledge with respect to the substance of such representation or warranty, such inaccuracy will be deemed a breach of the applicable representation or warranty**. The Company shall have a period of sixty (60) days from the earlier of its discovery or its receipt of notice of any such breach within which to correct or cure such breach. **The Company hereby covenants and agrees that if any such breach is not corrected or cured within such sixty (60) day period, the Company shall, at the Purchaser's option either repurchase such Mortgage Loan** (and the related Servicing Rights) at the Repurchase Price **or substitute a mortgage loan** for the Defective Mortgage Loan as provided below. **In the event that any such breach** shall involve any representation or warranty set forth in Section 3.01, and such breach **is not cured within sixty (60) days** of the earlier **of either discovery by or notice to the Company** of such breach, **all Mortgage Loans shall**, at the option of the Purchaser, **be repurchased** by the Company at the Repurchase Price. . . .

(EquiFirst Purchase Agreement § 3.03 (emphasis added).) That is, if EquiFirst discovered the breach, it had sixty days from its discovery of a breach of the representations and warranties to cure the breach. If the breach was not cured within sixty days, EquiFirst was required to "at the Purchaser's option . . . repurchase such Mortgage." (*Id.*) Because EquiFirst was still obligated to cure without notice if it discovered a breach, the Court finds that timely notice is **not** a condition precedent to all of the claims asserted by the Trustee.

## 2. Breach of Contract Claims

### a. Res Judicata and Claim Splitting

EquiFirst argues that the Trustee should be barred from bringing Count I (Breach of Contract – Specific Performance) and Count II (Breach of Contract – Failure to Repurchase and Indemnify) under the doctrines of res judicata or claim splitting.[6] In *HE3-I*, all of the Trustee's claims against EquiFirst were dismissed, including the Trustee's claim seeking specific performance for breach of the representations and warranties and the Trustee's claim seeking monetary damages for failure to repurchase (*see* 11-2542, Compl., Docket No. 1). 843 F. Supp. 2d at 1001. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Gurley v. Hunt*, 287 F.3d 728, 731 (8th Cir. 2002) (internal quotation marks omitted).

> The test applied to determine whether res judicata bars litigation of a claim is: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the judgment was a final judgment on the merits[;] and (3) whether the same cause of action and same parties or their privies were involved in both cases.

*Id.*

*HE3-I* was a final judgment on the merits regarding the Trustee's specific performance and failure to repurchase claims against EquiFirst. Although considering a

---

[6] EquiFirst also argues that the doctrine of collateral estoppel bars the Trustee's non-repurchase damages claims (Counts II, III, and V). For collateral estoppel to apply, the issue sought to be precluded must be identical to the issue previously decided. *See Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009). The issues are not identical to those in *HE3-II* because the purchase agreements for WMC and EquiFirst are not identical in all material respects. Additionally the Trustee had not previously alleged (in *HE3-I* and *HE3-II*) that the Originators knew of the breaches at issue before the Trustee. Therefore collateral estoppel does not bar these claims.

motion to dismiss, the Court examined the merits of the case when it determined whether the notice to EquiFirst was timely and concluded that the Trustee had failed to satisfy the timely notice requirements of the EquiFirst Purchase Agreement. *See HE3-I*, 843 F. Supp. 2d at 1000. Moreover, a Rule 12(b)(6) dismissal is a "judgment on the merits" for res judicata purposes unless the plaintiff is granted leave to amend his complaint or the dismissal is reversed on appeal.[7] *United States v. Maull*, 855 F.2d 514, 517, n.3 (8th Cir. 1988); *see also Lair v. Oglesby*, 14 F.3d 15, 17 n.2 (8th Cir. 1993) ("[R]es judicata can apply to prevent reassertion of dismissed claims, even though there remain live claims in the same litigation.") In Counts I and II, the Trustee brings the same causes of action, arising out of the same nucleus of operative facts, against EquiFirst as in *HE3-I*. None of the Trustee's variations on its theories arose after the original complaint was filed. Because the Court finds that the claims of Count I and II of Case Number 12-2149 either were brought or could have been brought as part of Case Number 11-2542, the Court will grant EquiFirst's motion to dismiss Counts I and II.

### b. Count V: Failure to Make Whole Claim

The Trustee seeks to recover damages from EquiFirst because of its breaches of the representations and warranties it made regarding the loans. The relevant factual contentions made by the Trustee against WMC and EquiFirst are identical, and the

---

[7] The Court will also deny the Trustee's motion to amend with respect to EquiFirst in Case Number 11-2542 (*see* Part II, *infra*) because the Trustee waited so long to introduce its new theories and provides no valid reason for waiting so long to introduce them. *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550-51 (8th Cir. 1997) (concluding that the district court did not abuse its discretion in denying leave to amend after the complaint had been dismissed when plaintiffs failed to provide any valid reason for failing to amend earlier). The Trustee could have advanced its "new" theories against EquiFirst long ago.

arguments made by both parties are very similar to those made by WMC and the Trustee in Part I.B.1.b, *supra*. For the reasons stated above (*see* Part I.B.1.b), the Court will not dismiss the Failure to Make Whole Claim (Count V). The Court again emphasizes that the language of the contract would limit the Trustee's remedies but for the gross negligence exception. Although the Court is dubious the claim would survive a motion for summary judgment, it will nevertheless allow the Trustee the opportunity to collect facts that prove EquiFirst's gross negligence or recklessness.

### c.  Remaining Claims: Count III: Failure to Notify Claim, Count IV: Contractual Indemnification, Count VI: Declaratory Relief

The remaining claims the Trustee brings against EquiFirst are identical to the claims brought against WMC. For the reasons discussed above, the Court grants EquiFirst's motion to dismiss Count IV (Indemnification)[8] and Count VI (Declaratory Relief). The Court will deny EquiFirst's motion to dismiss Count III (Breach of Contract – Failure to Notify).

## II.  THE TRUSTEE'S MOTION TO AMEND ITS COMPLAINT

In Case Number 11-2542, the Trustee seeks to amend its complaint to include the six counts at issue in the other three cases. Moreover, the Trustee seeks to reintroduce claims against EquiFirst despite its early dismissal from the case.

---

[8] In addition to the reasons outlined above for finding that the intention of the parties to cover first party losses is not unmistakably clear, the Court notes that in the EquiFirst Purchase Agreement the clause that the Trustee seeks to apply is under the heading: "Indemnification; Third Party Claims." (EquiFirst Purchase Agreement § 5.01.)

Under Federal Rule of Civil Procedure 15(a)(2), once a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." The Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks omitted). "In most cases, delay alone is insufficient justification; prejudice to the nonmovant must also be shown." *Id.* (alteration and internal quotation marks omitted). When a party seeks to amend the pleadings **after** the district court dismisses the complaint, however, "unexcused delay by the plaintiff in seeking to amend is sufficient to justify the court's denial." *In re NationsMart Corp. v. Sec. Litig.*, 130 F.3d 309, 322 -23 (8th Cir. 1997).

The majority of the claims the Trustee seeks to assert against WMC are the same as those discussed at length above. The Court will, therefore, tailor its order as to Counts II through VI to be consistent with the other three cases, permitting amendment only of Count III (Failure to Notify) and Count V (Failure to Make Whole). The Trustee also seeks to amend Count I, seeking specific performance for breach of the representations and warranties of the Purchase Agreement. Yet the Trustee admits that under the Court's prior rulings WMC has no obligation to repurchase the mortgages. (Civ. No. 11-2542, Pl.'s Mem. in Opp. to WMC's Mot. for Summ. J. at 2, Jan. 25, 2013, Docket No. 119.)

Because the Trustee has failed to show that it is entitled to repurchase for any of the mortgages at issue, leave to amend Count I will be denied in Case Number 11-2542.

In its amendment, the Trustee seeks to reintroduce claims against EquiFirst despite its early dismissal from the case. The claims against EquiFirst were dismissed in February 2012, and the Trustee did not move to amend the complaint until January 2013, after WMC moved for summary judgment on the remaining claims. The Court will therefore deny the Trustee's motion to amend the complaint as it applies to EquiFirst. *See, e.g.*, *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 629 (8th Cir. 1999) ("A district court does not abuse its discretion in denying a plaintiff leave to amend the pleadings to change the theory of their case after the complaint has been dismissed under Rule 12(b)(6)."). The Trustee has not demonstrated why it could not have brought these additional theories against EquiFirst at an earlier time. *See Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1050 (8th Cir. 2010).

## III.  WMC'S MOTION FOR SUMMARY JUDGMENT

WMC moves for summary judgment on the remaining 19 loans in the original case (Civ. No. 11-2542). The Trustee admits that the existing claims relating to the 19 loans would be subject to an adverse judgment under the Court's prior rulings. The Court will, therefore, grant WMC's motion with respect to Counts I, II, IV, and VI. Because the Court finds that partial amendment is warranted, *see* Part II, *supra*, this motion will be denied as to Counts III and V.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     WMC Mortgage LLC's Motion to Dismiss Defendant's Fourth Amended Counterclaims [Civ. No. 12-1372, Docket No. 56], Motion to Dismiss the Second Amended Complaint [Civ. No. 12-1831, Docket No. 57], and Motion to Dismissy [Civ. No. 12-2149, Docket No. 39] are **GRANTED in part** and **DENIED in part** as follows:

    a.     Motions are **DENIED** as to **Count III** (Breach of Contract – Failure to Notify) and **Count V** (Breach of Contract – Failure to Make Whole);

    b.     Motions are **GRANTED** as to **Count II** (Breach of Contract – Failure to Repurchase and Indemnify), **Count IV** (Indemnification), and **Count VI** (Declaratory Relief).

2.     Equifirst Corporation's Motion to Dismiss [Civ. No. 12-2149, Docket No. 34] is **GRANTED in part** and **DENIED in part** as follows:

    a.     Motion is **GRANTED** as to **Count I** (Breach of Contract – Specific Performance), **Count II** (Breach of Contract – Failure to Repurchase and Indemnify), **Count IV** (Indemnification), and **Count VI** (Declaratory Relief);

    b.     Motion is **DENIED** as to **Count III** (Breach of Contract – Failure to Notify) and **Count V** (Breach of Contract – Failure to Make Whole).

3.     U.S. Bank National Association's Motion to Amend the Complaint [11-2542, Docket No. 114] is **GRANTED in part** and **DENIED in part** as follows:

a.     Motion is **DENIED** as to EquiFirst**;**

b.     Motion is **GRANTED in part** and **DENIED in part** as to WMC as follows:

i.     Motion as to WMC is **DENIED** as to **Count I** (Breach of Contract – Specific Performance), **Count II** (Breach of Contract – Failure to Repurchase and Indemnify), **Count IV** (Indemnification), and **Count VI** (Declaratory Relief);

ii.     Motion as to WMC is **GRANTED** as to **Count III** (Breach of Contract – Failure to Notify) and **Count V** (Breach of Contract – Failure to Make Whole).

4.     WMC's Motion for Summary Judgment as to the 19 Remaining Loans [11-2542, Docket No. 103] is **GRANTED in part** and **DENIED in part** as follows:

a.     Motion is **GRANTED** as to **Count I** (Breach of Contract – Specific Performance), **Count II** (Breach of Contract – Failure to Repurchase), **Count IV -** (Indemnification), and **Count VI** (Declaratory Relief).

b.     Motion is **DENIED** as to **Count III** (Breach of Contract – Failure to Notify) and **Count V** (Breach of Contract – Failure to Make Whole);

DATED:  October 11, 2013
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge